UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:    0:17-cv-60344-RS

ANTONIO ERVIN, *et al*.,
on their own behalf and all
similarly situated individuals,

      Plaintiff,

v.

THE SCOTTS COMPANY, LLC,
*et al*.,

      Defendants.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *UNOPPOSED* MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY
CERTIFICATION OF THE SETTLEMENT CLASSES, APPOINTMENT OF
PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE
PROPOSED RULE 23 CLASS MEMBER NOTICE**

## INTRODUCTION

Subject to Court approval, the parties have settled Plaintiffs' FLSA and state law claims on a class-wide basis for the significant monetary relief of $3,084,999.00. The proposed settlement satisfies all the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the FLSA. With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached hereto as **EXHIBIT 1** (and as Exhibit A to the Declaration of Andrew Frisch in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Frisch Decl."))[1]; (2) preliminarily certify the proposed Rule 23 settlement classes for settlement purposes only; (3) approve the proposed Rule 23 Class Member Notice ("Notice"), attached as **EXHIBIT 4** and direct its distribution; and (4) approve the proposed schedule for final settlement approval.

## I.      Factual and Procedural Background

### A.      Factual Allegations.

Plaintiffs, ANTONIO ERVIN ("Ervin"), KYLE BORGAILO ("Borgailo"), COLIN ROGERS ("Rogers"), MATTHEW SHEDRON ("Shedron"), ALEXANDER RAMIREZ ("Ramirez") and MICHAEL MELCHIOR ("Melchior") (collectively "Plaintiffs") are members of a conditionally certified FLSA Collective Action. Additionally, Borgailo, Rogers, Shedron, Ramirez, and Melchior are representatives of putative Rule 23 state law classes, comprised of Territory Service Representative ("TSRs")[2] who worked for Defendants, THE SCOTTS COMPANY LLC, EG SYSTEMS, INC., TRUGREEN, INC. and TRUGREEN LIMITED PARTNERSHIP (collectively "Defendants") in Illinois, Kentucky, Michigan, Oregon, and

---

[1] *See also* Declaration of Jason R. Bristol ("Bristol Decl.") who appeared *pro hac vice* in this action and served as co-lead counsel. The Frisch Decl. and Bristol Decl. are respectively attached hereto as **EXHIBITS 2** and **3**.
[2] Also referred to as Lawn Care Technicians.

1

Washington respectively.

Borgailo and the putative Illinois Rule 23 settlement class members are approximately 125 current and former TSRs who worked for Defendants in Illinois between September 13, 2015 and December 31, 2016.  Rogers and the putative Kentucky Rule 23 settlement class members are approximately 132 current and former TSRs who worked for Defendant in Kentucky between September 13, 2013 and December 31, 2016.  Shedron and the putative Michigan Rule 23 settlement class members are approximately 91 current and former TSRs who worked for Defendants in Michigan between September 13, 2015 and December 31, 2016.  Ramirez and the putative Oregon Rule 23 settlement class members are approximately 30 current and former TSRs who worked for Defendants in Oregon between September 13, 2012 and December 31, 2016.  Melchior and the Washington Rule 23 settlement class members are approximately 29 current and former TSRs who worked for Defendants, in Washington between September 13, 2015 and December 31, 2016.   Plaintiffs and the FLSA Collective Members are approximately 671 current and former TSRs who worked for Defendants throughout the United States.

Plaintiffs' job duties as TSRs involved primarily providing lawn care services to Defendants' customers.  At all times relevant, Defendants paid Plaintiffs as TSRs using its "fluctuating workweek" methodology, which Plaintiffs allege did not comply with the FLSA or state wage and hour laws.  Plaintiffs alleged that Defendants violated the FLSA and the laws of Illinois, Kentucky, Michigan, Oregon, and Washington, by misapplying the fluctuating workweek ("FWW") to them and failing to pay them time and one half of their regular rate of pay for overtime when they worked more than 40 hours in a workweek.  *See* Second Amended Complaint, D.E. 824.

### B.    Procedural History.

Plaintiffs Ricardo Vasquez[3] and Antonio Ervin initially filed their Complaint in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, on or about January 12, 2017, alleging violations of the FLSA as a result of Defendants' alleged misapplication of the FWW to calculate the overtime wages due to individuals working as TSRs. *See* Frisch Decl., ¶ 24.  The Complaint sought certification, pursuant to Section 216(b) of the FLSA, of a nationwide collective action.  *See id.*

The Defendants vigorously disputed both the merits of the Complaint's (and Amended Complaint/Second Amended Complaint's) allegations and whether the Litigation was appropriate for conditional certification.

On July 25, 2017, the Court entered an Order conditionally certifying the Litigation as a collective action pursuant to 29 U.S.C. 216 (b).  *See* Frisch Decl., ¶ 25; D.E. 36.

Court-approved notice was sent to approximately 3,593 individuals who worked as TSRs, and thus were given an opportunity to join the Litigation under the terms of 29 U.S.C. § 216(b). *See id.*, ¶ 18.

As a result of additional investigation conducted by Plaintiffs' Counsel, approximately 407 individuals who worked as TSRs in Illinois, Kentucky, Michigan, Oregon, and Washington were identified by Plaintiffs' Counsel as having meritorious state law overtime claims against Defendants.  *See* Frisch Decl., ¶¶ 16, 34.

Based on additional investigation done by Plaintiffs' Counsel, Plaintiffs' Counsel filed a Second Amended Class/Collective Action Complaint ("Amended Complaint") in the Litigation, on September 13, 2018, on behalf of the Plaintiffs.  *See* D.E. 824; Frisch Decl., ¶27.

---

[3] Vasquez subsequently withdrew his consent to join on October 25, 2019, [D.E. 853], and his claims were subsequently dismissed without prejudice by joint stipulation on March 27, 2020 [D.E. 984].

The Amended Complaint asserts Rule 23 class action claims under Illinois, Kentucky, Michigan, Oregon, and Washington law, and § 216(b) collective action claims under the FLSA and seeks recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs.  *See id.*

**C.**     **Discovery.**

The parties engaged in significant discovery before agreeing to resolve this case. The parties served and responded to interrogatories and document requests for over 50 opt-in Plaintiffs, some of whom were also putative Rule 23 class members. *Id.* Defendants produced thousands of pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, payroll and time records, personnel files, emails, and memoranda. *Id.* ¶ 34.  The discovery process also involved multiple rounds of briefing and several hearings relating to the proper scope of discovery and whether representative discovery was appropriate.  *Id.*  Defendants also produced all compensation acknowledgment forms for opt-in Plaintiffs in their possession or statements that they were not in possession of same for certain opt-in Plaintiffs.  The parties also conducted over 40 depositions of the Plaintiffs and opt-ins Plaintiffs. In addition, Plaintiffs interviewed hundreds of opt-in Plaintiffs regarding their hours worked and pay received. *Id.*  Plaintiffs also interviewed dozens of Defendants' former managers regarding the pay and timekeeping policies at issue.  Through this discovery, the parties exhaustively examined Plaintiffs' claims and Defendants' defenses.

**D.**     **Settlement Negotiations and Mediation.**

The Parties participated in an all-day mediation on May 22, 2018, with the assistance of Mediator Hunter Hughes, Esq. of Hunter ADR in Atlanta, Georgia.  *See id.*, ¶¶ 36 - 40.  Mr. Hughes is one of the most knowledgeable and skilled wage and hour class action mediators in

the country. *See id*., ¶ 17. In preparation for that mediation, Defendants provided Class Counsel with additional information about the facts underlying the claims made in the litigation, as well as full time and pay data for the members of the certified collective action. *See id*. That mediation was unsuccessful, and ultimately ended in an impasse, and the Parties continued to pursue their various claims and defenses in the litigation. *See id*., ¶¶ 35 -38.

Following a huge volume of additional discovery, the Parties rekindled settlement negotiations. *See id*., ¶ 39. Several weeks of intense negotiations throughout May and early June 2020 ultimately culminated in a settlement between the Parties. *See id*., ¶ 40. After additional negotiation, the Parties have now reduced their agreement to a formal Settlement Agreement, which Plaintiffs are presenting to the Court for preliminary approval. *See id*.; *see also* Exhibit 1.

## II.    Summary of the Settlement Terms

### A. Maximum Settlement Payment.

Defendants have agreed to a Maximum Settlement Amount of $3,084,999.00 which will cover:  (i) payments to Plaintiffs, FLSA Collective Members, and Participating Rule 23 Class Members totaling $1,964,450.74; (ii) service awards to Plaintiffs totaling $17,500; (iii) payment of the cost of the TPA, up to $35,000.00; (iv) attorneys' fees of up to $1,208,332.96 payable to Plaintiffs' counsel; and (v) cost and expenses of $39,715.30 payable to Plaintiffs' Counsel. Defendants' payment of these monies constitutes Defendants' entire monetary contribution to this Settlement. *See* Class and Collective Action Settlement Agreement. Ex. 1 ("Settlement Agreement").

### B. R e l e a s e.

In consideration of all payments made by Defendants under the Settlement Agreement,

Plaintiffs, all FLSA Collective Members, and all Participating Rule 23 Class Members will release and forever discharge the Defendants from any and all wage claims, obligations, causes of action, actions, demands, rights, damages (including liquidated damages and other statutory penalties), and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, arising on or before December 31, 2016, related to any unpaid wages, including unpaid overtime compensation, and includes those claims which were pled in the Action and those claims reasonably related to claims that were pled in the Action.

This release specifically includes, but is not limited to, a release of all claims and damages arising under the FLSA, and any state or local wage and hour statute or regulation, including, but not limited to claims and damages (including statutory penalties) under the Illinois Minimum Wage Law, 820 ILCS 105, *et seq.*; Kentucky state laws governing overtime compensation, KY. Rev. Stat. Ann. § 337.285, *et seq.*; the Michigan Workforce Opportunity Wage Act, M.C.L. § 408.411, *et seq.*; Oregon state laws governing overtime compensation, OR. Rev. Stat. Ann. § 653.261, *et seq.*; and Washington state laws governing overtime compensation, Wash. Rev. Code § 49.46.130, *et seq.* (formerly known as the Minimum Wage Act).

### C. Eligible Rule 23 Class Members.

The Illinois Rule 23 settlement class members are approximately 125 current and former TSRs who worked for Defendants, in Illinois between September 13, 2015 and December 31, 2016 who do not timely opt out. The Kentucky Rule 23 settlement class members are approximately 132 current and former TSRs who worked for Defendants in Kentucky between September 13, 2013 and December 31, 2016, who do not timely opt out. The Michigan Rule 23 settlement class members are approximately 91 current and former TSRs who worked for Defendants in Michigan between September 13, 2015 and December 31, 2016, who do not timely

opt out.  The Oregon Rule 23 settlement class members are approximately 30 current and former TSRs who worked for Defendants in Oregon between September 13, 2012 and December 31, 2016, who do timely not opt out.  The Washington Rule 23 settlement class members are approximately 29 current and former TSRs who worked for Defendants in Washington between September 13, 2015 and December 31, 2016, who do not timely opt out. Ex. 1 (Settlement Agreement) ¶ 3.

### D.  **The FLSA Collective Members.**

The FLSA Collective Members consist of the approximately 671 current and former TSRs who work or worked as TSRs for Defendants anywhere in the United States and were paid under the FWW method at any time from three (3) years prior to the date they filed their Consent to Join the Litigation[4], through December 31, 2016. Ex. 1 (Settlement Agreement), p. 6.

### E.  **Allocation Formula.**

As set forth on Exhibit C of the Settlement Agreement, both the FLSA Collective Members and the Rule 23 Class Members who do not timely opt out will be paid pursuant to an allocation formula based on their overtime hours worked, and rates of pay during the applicable limitations periods.  No FLSA Collective Member or participating Rule 23 Class Member will receive an award that is less than $100.00 before taxes are deducted. Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. *Id*. at ¶ 10(c).  Pursuant to the allocation formula(s), all FLSA Collective Members and participating Rule 23 Class Members will receive an average of 83% of the back wages owed, before attorneys' fees, costs, and administration fees are deducted.  *See* Frisch Decl., ¶ 28.

---

[4] The FLSA Class includes all opt-in Plaintiffs who either filed a Consent to Join in this case, or who timely submitted their consent to join to Simpluris.  *See* Ex. 1.

## F.  Attorneys' Fees and Litigation Costs.

Plaintiffs' counsel will apply for 33 1/3% of the Maximum Settlement Payment as attorneys' fees and will seek reimbursement of their costs as well.[5] *Id.*. Plaintiffs' counsel will file a formal motion for approval of fees and costs along with Plaintiffs' motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).  The Settlement Agreement is not conditioned on the award of attorneys' fees. The Court need not decide the attorneys' fees and costs issue now and can instead take that issue up as part of Plaintiffs' motion for final approval (which will be filed prior to the Final Approval Hearing to be scheduled by the Court).

## G.  Service Awards.

In addition to their individual awards under the allocation formula, Plaintiffs will apply for additional payments in recognition of the services they rendered on behalf of the classes ("Service Awards"). Ex. 1 (Settlement Agreement) at ¶ 11.  Plaintiffs will also apply for a Service Award for former plaintiff Vasquez in recognition of the services he rendered on behalf of the classes prior to his dismissal without prejudice.

Such service awards "are common in class action cases and are important to compensate

---

[5] This is a within the range of typical fee award in a common fund case.  *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012)(class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla.  Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding common fund 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99–md– 01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Khait*, 2010 WL 2025106, at *9; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (discussing the public policy reasons for incentive/service awards to class representatives). Like the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of Service Awards. Ex. 1 (Settlement Agreement) ¶ 11. Plaintiffs will file a motion for approval of Service Awards along with their motion for final approval of the settlement, and also address same here, to the extent that a portion of same are payable from the amount allocated to the FLSA Settlement.

### H. Settlement Claims Administrator.

Plaintiffs' Counsel has selected Simpluris to serve as the settlement claims administrator. The claims administrator's fees will be paid out of the Maximum Settlement Payment. Ex. 1 (Settlement Agreement) ¶ 4.

### III.   Class Action Settlement Procedure

Courts have established a defined procedure and specific criteria for approval of Rule 23 class action settlements that include three distinct steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.   Dissemination of mailed and/or published notice of settlement to all affected Rule 23 class members; and

3.   A final settlement approval hearing at which the Rule 23 class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002); *Willix*, 2011 WL 754862, at *1-2; *Khait*, 2010 WL 2025106, at *1. This process safeguards Rule 23 class members' procedural due process

rights and enables the Court to fulfill its role as the guardian of class interests. With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, preliminarily certifying the Rule 23 classes for settlement purposes, and approving the proposed Rule 23 Class Member Notice and authorizing the claims administrator to send it to the Rule 23 Class Members.  Plaintiffs respectfully submit for the Court's approval the following schedule for final resolution of this matter:

1. Within seven (7) days after the Preliminary Approval Date, Defendants will provide Plaintiffs' Counsel and the TPA an Excel spreadsheet indicating the name and last known address of each Rule 23 Class Member according to Defendants' most current business records.  Plaintiffs' Counsel will not use this information to attempt to contact any Rule 23 Class Members in any way, except to respond to inquiries they may receive from Rule 23 Class Members that are initiated by Rule 23 Class Members.

2. Within fourteen (14) days after the Preliminary Approval Date, the TPA will send by first-class mail the Rule 23 Class Member Notice to each Rule 23 Class Member.  If the Postal Service returns any Rule 23 Class Member Notice to the TPA with a forwarding address, the TPA will promptly re-mail the Rule 23 Class Member Notice to the forwarding address.  If the Postal Service returns any Rule 23 Class Member Notice to the TPA without a forwarding address, the TPA will make reasonable efforts to obtain an updated address and promptly re-mail the Rule 23 Class Member Notice to any updated address.  The time period for any Rule 23 Class Member to object to or exclude himself or herself from the Settlement (as set forth below) will not be extended pro rata for any Rule 23 Class Member whose initial Rule 23 Class Member Notice is re-mailed pursuant to this Section.

3. Rule 23 Class Members who object to the Settlement must do so in writing and must state the specific basis for their objection.  To be considered, a written objection must be mailed to the TPA pursuant to the instructions in the Rule 23 Class Member Notice and must be postmarked within 60 (sixty) days of the date of the initial mailing of the Rule 23 Class Member Notice ("Objection Period").  Within seven (7) days following the expiration of the Objection Period, the TPA will send all received objections to Plaintiffs' Counsel and Defense Counsel.  Plaintiffs' Counsel will file all objections with the Court within two (2) business days of their receipt from the TPA.  Rule 23 Class Members who fail to make timely objections in the manner specified in this Section and/or in the Rule 23 Class Member Notice shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

4. Rule 23 Class Members desiring to exclude themselves from the Settlement must do so in writing. To be effective, written exclusions must be mailed to the TPA pursuant to the instructions in the Rule 23 Class Member Notice and must be postmarked within sixty (60) days of the date of the initial mailing of the Rule 23 Class Member Notice ("Exclusion Period"). Within seven (7) days following the expiration of the Exclusion Period, the TPA will send all received exclusions to Plaintiffs' Counsel and Defense Counsel. Plaintiffs' Counsel will file all exclusions with the Court within two (2) business days of their receipt from the TPA. Rule 23 Class Members who do not timely and properly exclude themselves from the Settlement will be bound by this Settlement, including the Release provision described in Section 5 above. Any Rule 23 Class Member who timely and properly requests exclusion will not be entitled to his/her Settlement Share and will not have any right to object or appeal to, or comment on, the Settlement.

5. The Court will conduct the Final Fairness Hearing at a time to be determined by the Court. The Parties request that the Court conduct this hearing after the 90-day CAFA Notice Period has expired. No later than seven (7) days before the Final Fairness Hearing, or at a date specified by the Court, Plaintiffs will file with the Court a motion and supporting memorandum seeking entry of the Final Approval Order granting final certification of the proposed Rule 23 settlement class for settlement purposes only, granting final approval of the Settlement, authorizing distribution of the Settlement Shares to the Plaintiffs, the FLSA Collective Members, and the Participating Rule 23 Class Members, approving all other payments due under the Settlement, dismissing the Action with prejudice, and retaining jurisdiction of the Action to enforce this Agreement. Plaintiffs' Counsel will afford Defense Counsel a reasonable time to review and offer revisions to the motion, supporting memorandum, and proposed Final Approval Order prior to their filing.

## ARGUMENT

### I.  The Rule 23 Settlement Classes Satisfy the Requirements of FRCP 23.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed.R.Civ.P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair and adequate. *See In re Checking Account Overdraft Litiq.,* 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011); Fed.R.Civ.P. 23(e)(2), (e)(1).

11

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *2 (S.D. Ga. Apr. 18, 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement classes each satisfy the requisite Rule 23 factors detailed below. Thus, the Court should certify the settlement classes.

### A. **Numerosity.**

Here, there are 125 members of the proposed Illinois Rule 23 Class, 132 members of the proposed Kentucky Rule 23 Class, 91 members of the proposed Michigan Rule 23 Class, 30 members of the proposed Oregon Rule 23 Class, and 29 members of the proposed Washington Rule 23 class. For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir.1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

### B. **Commonality.**

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D.Fla.2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact regarding each of the Rule 23 Classes that center on Defendants' class-wide pay and timekeeping policies and practices pertaining to its TSRs throughout Illinois, Kentucky, Michigan, Oregon and Washington, and are common to the

Settlement Classes.

### C. **Typicality.**

The Plaintiffs' claims are typical of the Settlement Classes they seek to certify for purposes of this settlement because they concern the same pay and timekeeping policies and practices, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Therefore, Rule 23(a)(3) is therefore satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### D. **Adequacy.**

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the Settlement Class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the respective Settlement Classes, and Plaintiffs have retained competent counsel to represent them and the Settlement Classes. Class Counsel here regularly engage in wage and hour class litigation and other complex litigation similar to the present Action and have dedicated substantial resources to the prosecution of the Action. *See* Decl. of Andrew R. Frisch; Decl. of Jason R. Bristol. Moreover, the Plaintiffs and Class Counsel have vigorously and competently represented the Settlement Class Members' interests in the Action. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir.2000).

### E. **Predominance and Superiority.**

13

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for hundreds of Settlement Class Members in a single, coordinated proceeding is superior to close to hundreds of individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir.2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all Settlement Class Members in a single common judgment. *See In re Checking Account Overdraft Litigation*, 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement classes. Thus, the Court should preliminarily certify the Rule 23 settlement classes.

## II.     Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir.1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal

14

quotation marks omitted).

At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." 4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *5 (S.D. Fla. May 14, 2007) (quoting *Armstrong v. Board of School Directors,* 616 F.2d 305, 312 (7th Cir.1980)); *see also Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness... and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *Danieli v. IBM*, No. 08 Civ. 3688, 2009 WL 6583144, at *4 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the

respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 2011 WL 6003986 (11th Cir. 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

The first step in the Rule 23 settlement process simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

      A.    <u>The Settlement Is Fair, Reasonable, and Adequate.</u>

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).  Although the Court need not evaluate the *Bennett* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

**1.   The Likelihood of Success at Trial.**

Although Plaintiffs' believe their case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 356 (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages. Although Plaintiffs believe that Defendants would bear the burden of proving that Plaintiffs were paid in accordance with the FWW, such a determination would require the parties to put on substantial evidence regarding Defendants' corporate time and pay policies, and Plaintiffs' time worked, pay received, and understanding of how each of the Plaintiffs and class members were paid.

While Plaintiffs believe that they could ultimately defeat Defendants' defenses and establish liability, this would require significant factual development and favorable outcomes at trial and on appeal, all of which is inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of preliminary approval.

**2.   Range of Possible Recovery and Range at Which Settlement is Fair.**

17

The relief sought in the Settlement is reasonable and within the range of remedies permitted by law.   Based on Defendants' time and pay records, Plaintiffs' Counsel have determined that each class member is receiving approximately 83% of his or her back wages.

"While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail."  *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C. October 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness").

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

### 3.   Litigation Through Trial Would Be Complex, Costly, and Long.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with approximately 407 Rule 23 Class Members and 671 FLSA Collective Members.

Although there has been significant discovery already, additional discovery would be required to establish liability and damages, including depositions of additional class members

and Defendants' employees and managers, as well as the people on whom Defendants contend they relied for its "good faith" defense. Further, although the Court conditionally certified an FLSA Collective Action, the Court made clear in its Order that there were class certification issues that could and would likely be revisited if the case had progressed. Moreover, Defendants would have opposed certification of the Rule 23 Classes had the matter not resolved, and sought to decertify same, even in the event that the Court ultimately certified one or more Rule 23 classes.  Indeed, Defendants would likely have sought to decertify one or more of the classes, adding additional uncertainty to the future of the litigation.

In addition, the parties likely would have filed cross-motions for summary judgment regarding the applicability of the FWW or lack thereof. If the Court denied the motions, a fact-intensive trial would be necessary to determine whether Defendants' properly implemented the FWW or violated the FLSA and/or state wage and hour laws. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, this *Bennett* factor weighs in favor of preliminary approval.

### 4.   The Reaction to the Settlement Has Been Positive.

Although notice of the settlement has not yet issued to the Rule 23 classes, the named Plaintiffs have expressed their approval of the settlement by signing the Settlement Agreement. Further, to the extent Plaintiffs' counsel has received inquiries from class members regarding the settlement, all class members have reacted favorably to the settlement to date.  After notice issues and class members have had an opportunity to weigh in,

the Court can more fully analyze this factor. *See* Frisch Decl., ¶ 49.

**5.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.**

The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, both parties responded to and propounded discovery requests, resulting in the exchange of thousands of pages of documents, including Defendants' corporate policies, acknowledgment forms, payroll records, class-wide payroll and workweek information, and emails. Frisch Decl. ¶¶ 32-34.   Defendants also received voluminous documents from the Plaintiffs, FLSA Collective Plaintiffs, and Rule 23 Class Members.  In addition, Plaintiffs' counsel interviewed hundreds of Plaintiffs, FLSA Collective Plaintiffs and Rule 23 Class Members about their job duties and hours worked, and Defendants' deposed over 40 of the FLSA Collective Plaintiffs, some of whom are also Rule 23 class members. *Id.*

Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where the parties exchanged payroll and time data and policies and

procedures and where plaintiffs interviewed numerous opt-ins regarding their duties and hours worked). This factor also weighs in favor of preliminary approval.

**III.**     **The Proposed Rule 23 Class Member Notice Is Appropriate.**

The contents of the proposed Rule 23 Class Notice, which is attached as Exhibit D to the Settlement Agreement, fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies all of these requirements. It also explains the basis on which each class member's award was determined, and the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put the class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the claims administrator will mail the Notice to the last known address of each class member within 14 days of the Court's preliminary approval order. Ex. 1 (Settlement Agreement) ¶ 8 (B). The claims administrator will take all reasonable steps to obtain the correct address of any class members for whom notices are returned as undeliverable. *Id*. Class Members will have sixty (60) days to opt out of or object to the settlement. *Id.,* ¶8(C).

## IV.   <u>Plaintiffs Will Seek Approval of the FLSA Settlement.</u>

In their motion for final approval, Plaintiffs will seek final approval of the settlement of the FLSA claims separately from the Rule 23 claims. FLSA claims are brought as a "collective action," in which employees must affirmatively "opt in" to the litigation, unlike the procedure under Rule 23. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [state law]"). Because under the FLSA "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.") Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement. When Plaintiffs file their Motion for Final Approval, they will seek approval of the FLSA settlement.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the settlement, preliminarily certify the Rule 23 settlement classes, appoint Plaintiffs' counsel as Class Counsel, approve the Rule 23 Class Member Notice, set the final approval hearing for a date that is after the 90-day CAFA Notice period, and enter the proposed Order.

Dated: July 27, 2020
      Plantation, Florida

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

/s/ **Andrew R. Frisch**
Andrew R. Frisch
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone:  (954)  WORKERS
Facsimile: (954) 327-3013

*Attorneys for Plaintiffs and the Proposed Class*