UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:     0:17-cv-60344-RS

ANTONIO ERVIN, *et al.*,
on their own behalf and all
similarly situated individuals,

      Plaintiffs,

v.

THE SCOTTS COMPANY, LLC, *et al.*,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS AND
COLLECTIVE ACTION SETTLEMENT AGREEMENT, APPROVAL OF SERVICE
AWARDS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

**Submitted by:**

Andrew R. Frisch, Esq.
MORGAN & MORGAN P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013

*Attorneys for Plaintiffs and the Settlement Class*

# I.  <u>TABLE OF CONTENTS</u>

II.   INTRODUCTION .................................................................................................. 1

III.   FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

A.   Factual Allegations ......................................................................................... 2

B.   Procedural History .......................................................................................... 3

C.   Discovery ........................................................................................................ 4

D.   Settlement Negotiations and Mediation.......................................................... 5

IV.   SUMMARY OF THE SETTLEMENT TERMS ................................................ 6

A.   The Settlement Fund ....................................................................................... 6

B.   Release ............................................................................................................ 6

C.   Eligible Class Members .................................................................................. 7

D.   Allocation Formula ......................................................................................... 8

E.   Service Award................................................................................................. 9

VI.   ARGUMENT ...................................................................................................... 9

A.   The Settlement Class Meets the Legal Standard for Class Certification. ........................... 9

1.   Numerosity. ......................................................................................... 10

2.   Commonality........................................................................................ 11

3.   Typicality ............................................................................................ 11

4.   Adequacy.............................................................................................. 12

5.   Predominance and Superiority ............................................................ 13

B.   The Proposed Settlement is fair, reasonable, and adequate, and should be .........................

approved. .............................................................................................................. 13

1.   The Settlement Is Fair, Reasonable, and Adequate.............................. 14

C.   Approval of the FLSA Settlement Is Appropriate Under Federal Law. ........................... 20

VII.   CONCLUSION ................................................................................................... 21

# INTRODUCTION[1]

Subject to Court's approval, the parties have settled Plaintiffs' FLSA and state law claims on a class-wide basis for the significant monetary relief of $3,084,999.00. The Court has already preliminarily approved the settlement.  By the instant Plaintiffs seek final approval. The proposed settlement satisfies all the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the FLSA. With this motion, Plaintiffs respectfully request that the Court: (1) finally approve the Settlement; (2) certify for settlement purposes the Settlement Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e); (3) appoint Plaintiffs ANTONIO ERVIN ("Ervin"), KYLE BORGAILO ("Borgailo"), COLIN ROGERS ("Rogers"), MATTHEW SHEDRON ("Shedron"), ALEXANDER RAMIREZ ("Ramirez") and MICHAEL MELCHIOR ("Melchior") as "Settlement Class Representatives"; (4) appoint as Class Counsel Andrew R. Frisch, the firm of Morgan & Morgan, P.A., Jason R. Bristol, the firm of Cohen, Rosenthal, & Kramer, LLP, and Jacob Auerbach, and the firm of Gallup Auerbach; (5) retain continuing jurisdiction over Plaintiffs, the Settlement Class, and Defendants to implement, administer, consummate and enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; (6) enter Final Judgment dismissing the Action with prejudice; (7) declare the same binding on all Participating Class Members, and enjoin the Plaintiffs, FLSA Collective Members, and Participating Rule 23 Class Members from pursuing any claims that are released by the Settlement Agreement;  and (8) enter an Order of Final Approval of Settlement.

---

[1] Plaintiffs are aware of the requirement to submit a proposed order under local rules.  Due to the timing of the Motion relative to the notice period, Plaintiffs intend to file a proposed order closer in time to the final approval hearing.

1

## I.     Factual and Procedural Background

### A.     Factual Allegations.

Plaintiffs, ANTONIO ERVIN ("Ervin"), KYLE BORGAILO ("Borgailo"), COLIN ROGERS ("Rogers"), MATTHEW SHEDRON ("Shedron"), ALEXANDER RAMIREZ ("Ramirez") and MICHAEL MELCHIOR ("Melchior") (collectively "Plaintiffs") are members of a conditionally certified FLSA Collective Action.  Additionally, Borgailo, Rogers, Shedron, Ramirez, and Melchior are representatives of putative Rule 23 state law classes, comprised of Territory Service Representative ("TSRs")[2] who worked for Defendants, THE SCOTTS COMPANY LLC, EG SYSTEMS, INC., TRUGREEN, INC. and TRUGREEN LIMITED PARTNERSHIP (collectively "Defendants") in Illinois, Kentucky, Michigan, Oregon, and Washington respectively.

Borgailo and the putative Illinois Rule 23 settlement class members are approximately 80 current and former TSRs who worked for Defendants in Illinois between September 13, 2015 and December 31, 2016.  Rogers and the putative Kentucky Rule 23 settlement class members are approximately 101 current and former TSRs who worked for Defendant in Kentucky between September 13, 2013 and December 31, 2016.  Shedron and the putative Michigan Rule 23 settlement class members are approximately 61 current and former TSRs who worked for Defendants in Michigan between September 13, 2015 and December 31, 2016.  Ramirez and the putative Oregon Rule 23 settlement class members are approximately 20 current and former TSRs who worked for Defendants in Oregon between September 13, 2012 and December 31,

---

[2] Also referred to as Lawn Care Technicians.

2

2016.  Melchior and the Washington Rule 23 settlement class members are approximately 19 current and former TSRs who worked for Defendants, in Washington between September 13, 2015 and December 31, 2016.[3]   Plaintiffs and the FLSA Collective Members are approximately 671 current and former TSRs who worked for Defendants throughout the United States.

Plaintiffs' job duties as TSRs involved primarily providing lawn care services to Defendants' customers.  At all times relevant, Defendants paid Plaintiffs as TSRs using its "fluctuating workweek" methodology, which Plaintiffs allege did not comply with the FLSA or state wage and hour laws.  Plaintiffs alleged that Defendants violated the FLSA and the laws of Illinois, Kentucky, Michigan, Oregon, and Washington, by misapplying the fluctuating workweek ("FWW") to them and failing to pay them time and one half of their regular rate of pay for overtime when they worked more than 40 hours in a workweek.  *See* Second Amended Complaint, D.E. 824.

### B.    Procedural History.

Plaintiffs Ricardo Vasquez[4] and Antonio Ervin initially filed their Complaint in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, on or about January 12, 2017, alleging violations of the FLSA as a result of Defendants' alleged misapplication of the FWW to calculate the overtime wages due to individuals working as TSRs. *See* Declaration of Andrew Frisch ("Frisch Decl.," ¶ 24), attached hereto as Exhibit 1.  The

---

[3] The number of state law class members contained in this Memorandum varies from the number of class members reference in the Preliminary Approval papers.  The numbers initially referenced in the Motion for Preliminary Approval were erroneously pulled from a draft (non-final) version of the settlement agreement. The total number of individuals in each state law class contained within Exhibit B of the settlement agreement approved by the Court—***which have not changed***—are referenced herein.  *See* 916-2, Class and Collective Action Settlement Agreement.
[4] Vasquez subsequently withdrew his consent to join on October 25, 2019, [D.E. 853], and his claims were subsequently dismissed without prejudice by joint stipulation on March 27, 2020 [D.E. 984].

Complaint sought certification, pursuant to Section 216(b) of the FLSA, of a nationwide collective action. *See id.*

The Defendants vigorously disputed both the merits of the Complaint's (and Amended Complaint/Second Amended Complaint's) allegations and whether the Litigation was appropriate for conditional certification.

On July 25, 2017, the Court entered an Order conditionally certifying the Litigation as a collective action pursuant to 29 U.S.C. 216 (b). *See* Frisch Decl., ¶ 25; D.E. 36. Court-approved notice was sent to approximately 3,593 individuals who worked as TSRs, and thus were given an opportunity to join the Litigation under the terms of 29 U.S.C. § 216(b).

 Based on additional investigation done by Plaintiffs' Counsel, Plaintiffs' Counsel filed a Second Amended Class/Collective Action Complaint ("Amended Complaint") in the Litigation, on September 13, 2018, on behalf of the Plaintiffs. *See* D.E. 824. The Amended Complaint asserts Rule 23 class action claims under Illinois, Kentucky, Michigan, Oregon, and Washington law, and § 216(b) collective action claims under the FLSA and seeks recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs. *See* Frisch Decl., ¶¶ 19 - 23. Approximately 281 individuals who worked as TSRs in Illinois, Kentucky, Michigan, Oregon, and Washington were identified by Plaintiffs' Counsel as having meritorious state law overtime claims against Defendants.

C. **Discovery.**

The parties engaged in significant discovery before agreeing to resolve this case. The parties served and responded to interrogatories and document requests for over 50 opt-in Plaintiffs, some of whom were also putative Rule 23 class members. *Id*. at 33. Defendants produced thousands of pages of documents in response to Plaintiffs' document requests,

including corporate policies, training materials, payroll and time records, personnel files, emails, and memoranda. *Id*. ¶¶ 33, 34. The discovery process also involved multiple rounds of briefing and several hearings relating to the proper scope of discovery and whether representative discovery was appropriate. Defendants also produced all compensation acknowledgment forms for opt-in Plaintiffs in their possession or statements that they were not in possession of same for certain opt-in Plaintiffs. In addition, Plaintiffs interviewed opt-in Plaintiffs regarding their hours worked and pay received. *Id*. at 31. Plaintiffs also interviewed dozens of Defendants' former managers regarding the pay and timekeeping policies at issue. Through this discovery, the parties exhaustively examined Plaintiffs' claims and Defendants' defenses.

### D. Settlement Negotiations and Mediation.

The Parties participated in an all-day mediation on May 22, 2018, with the assistance of Mediator Hunter Hughes, Esq. of Hunter ADR in Atlanta, Georgia. *See id*., ¶¶ 36 - 40. Mr. Hughes is one of the most knowledgeable and skilled wage and hour class action mediators in the country. *See id*., ¶36. In preparation for that mediation, Defendants provided Class Counsel with additional information about the facts underlying the claims made in the litigation, as well as full time and pay data for the members of the certified collective action. That mediation was unsuccessful, and ultimately ended in an impasse, and the Parties continued to pursue their various claims and defenses in the litigation. *See id*., ¶38.

Following a huge volume of additional discovery, the Parties rekindled settlement negotiations. *See id*., ¶ 39. Several weeks of intense negotiations throughout May and early June 2020 ultimately culminated in a settlement between the Parties. *See id*., ¶ 40. After additional negotiation, the Parties reduced their agreement to a formal Settlement Agreement, which Plaintiffs are presenting to the Court for final approval. *See id*.; *see also* D.E. 916-2.

## II.    Summary of the Settlement Terms

### A. Maximum Settlement Payment.

Defendants have agreed to a Maximum Settlement Amount of $3,084,999.00 which will cover:  (i) payments to Plaintiffs, FLSA Collective Members, and Participating Rule 23 Class Members totaling $1,964,450.74; (ii) service awards to Plaintiffs totaling $17,500; (iii) payment of the cost of the TPA, up to $35,000.00; (iv) attorneys' fees of up to $1,208,332.96 payable to Plaintiffs' counsel; and (v) cost and expenses of $39,715.30 payable to Plaintiffs' Counsel. Defendants' payment of these monies constitutes Defendants' entire monetary contribution to this Settlement.  *See* Class and Collective Action Settlement Agreement. Ex. 1 ("Settlement Agreement").

### B. Release.

In consideration of all payments made by Defendants under the Settlement Agreement, Plaintiffs, all FLSA Collective Members, and all Participating Rule 23 Class Members will release and forever discharge the Defendants from any and all wage claims, obligations, causes of action, actions, demands, rights, damages (including liquidated damages and other statutory penalties), and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, arising on or before December 31, 2016, related to any unpaid wages, including unpaid overtime compensation, and includes those claims which were pled in the Action and those claims reasonably related to claims that were pled in the Action. This release specifically includes, but is not limited to, a release of all claims and damages arising under the FLSA, and any state or local wage and hour statute or regulation, including, but not limited to claims and damages (including statutory penalties) under the Illinois Minimum

6

Wage Law, 820 ILCS 105, *et seq.*; Kentucky state laws governing overtime compensation, KY. Rev. Stat. Ann. § 337.285, *et seq.*; the Michigan Workforce Opportunity Wage Act, M.C.L. § 408.411, *et seq.*; Oregon state laws governing overtime compensation, OR. Rev. Stat. Ann. § 653.261, *et seq.*; and Washington state laws governing overtime compensation, Wash. Rev. Code § 49.46.130, *et seq.* (formerly known as the Minimum Wage Act).

### C. **Eligible Rule 23 Class Members.**

The Illinois Rule 23 settlement class members are approximately 80 current and former TSRs who worked for Defendants, in Illinois between September 13, 2015 and December 31, 2016, who do not timely opt out. The Kentucky Rule 23 settlement class members are approximately 132 current and former TSRs who worked for Defendants in Kentucky between September 13, 2013 and December 31, 2016, who do not timely opt out. The Michigan Rule 23 settlement class members are approximately 61 current and former TSRs who worked for Defendants in Michigan between September 13, 2015 and December 31, 2016, who do not timely opt out. The Oregon Rule 23 settlement class members are approximately 20 current and former TSRs who worked for Defendants in Oregon between September 13, 2012 and December 31, 2016, who do timely not opt out. The Washington Rule 23 settlement class members are approximately 19 current and former TSRs who worked for Defendants in Washington between September 13, 2015 and December 31, 2016, who do not timely opt out. Ex. 1 (Settlement Agreement) ¶ 3.

### D. **The FLSA Collective Members.**

The FLSA Collective Members consist of approximately 671 current and former TSRs who work or worked as TSRs for Defendants anywhere in the United States and were paid

under the FWW method at any time from three (3) years prior to the date they filed their Consent to Join the Litigation[5], through December 31, 2016. Ex. 1 (Settlement Agreement), p. 6.

**E. Allocation Formula.**

As set forth on Exhibit C of the Settlement Agreement, both the FLSA Collective Members and the Rule 23 Class Members who do not timely opt out will be paid pursuant to an allocation formula based on their overtime hours worked, and rates of pay during the applicable limitations periods.  No FLSA Collective Member or participating Rule 23 Class Member will receive an award that is less than $100.00 before taxes are deducted. Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. *Id*. at ¶ 10(c).  Pursuant to the allocation formula(s), all FLSA Collective Members and participating Rule 23 Class Members will receive approximately 58% of their best day in court, net of attorneys' fees and costs, service awards, and third-party administrator fees, assuming the time-and-one half model, urged by Plaintiffs. Plaintiffs are receiving approximately 175% of their best day in court, net of attorneys' fees and costs, service awards, and third-party administrator fees, assuming a half-time calculation, urged by Defendants. This compares favorably with amounts received by employees in similar lawsuits. *See* Frisch Decl., ¶45.

**F. Attorneys' Fees and Litigation Costs.**

Plaintiffs' counsel will apply for 33 1/3% of the Maximum Settlement Payment as attorneys' fees and will seek reimbursement of their costs as well.[6] *Id*. at 46.  Plaintiffs' counsel have filed a

---

[5] The FLSA Class includes all opt-in Plaintiffs who either filed a Consent to Join in this case, or who timely submitted their consent to join to Simpluris.  *See* Ex. 1.
[6] This is a within the range of typical fee award in a common fund case.  *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the

formal motion for approval of fees and costs along with Plaintiffs' motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).   The Settlement Agreement is not conditioned on the award of attorneys' fees.

### G.   Service Awards.

In addition to their individual awards under the allocation formula, Plaintiffs have applied for additional payments in recognition of the services they rendered on behalf of the classes ("Service Awards") by separate Motion.

### ARGUMENT AND AUTHORITY

### A.   The Settlement Class Meets the Legal Standard for Class Certification.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the

---

recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.,* 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC,* 2012 WL 1355573 (S.D. Ga. April 18, 2012)(class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.,* 2011 WL 6846747, at *6 (M.D. Fla.  Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

Court must certify the settlement class. Fed. R. Civ. P. 23(c). Second, the Court must determine whether the settlement is fair and adequate. *See In re Checking Account Overdraft Litiq.,* 2011 WL 5873389, at \*6 (S.D. Fla. Nov. 22, 2011); Fed.R.Civ.P. 23(e)(2), (e)(1).

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at \*2 (S.D. Ga. April 18, 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[7] Thus, the Court should certify the settlement class.

### 1. Numerosity.

"Numerosity" speaks to the practicability of joining all members in the litigation in lieu of implementing the class action procedure. *See* FED.R.CIV.P. 23(a)(1). It frequently is said that attending circumstances dictate the existence of "numerosity," rather than the mere satisfaction of some arbitrarily numeric formulae. *See, e.g., Garcia v. Gloor,* 609 F.2d 156, 160 (5th Cir.1980); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993) (considering the totality of facts when applying Rule 23(a)(1)). Thus, as the Rule itself suggests, the "numerous" character of any action turns upon concepts of general unwieldiness, not size

---

[7] Federal courts throughout Florida have granted class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.,* 2014 WL 2625181 (M.D. Fla. June 12, 2014) (certifying opt-out Rule 23 class FLMWA claims); *Lopez v. Hayes Robertson Group, Inc.,* 2013 WL 10561294 (S.D. Fla. Sept. 23, 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.,* 280 F.R.D. 640 (M.D. Fla. 2012) (Moody, J.) (certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010) (Steele, J.) (same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009) (same); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. July 18, 2008) (Howard, J.) (same).

alone. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) (movant need only show that joinder of prospective members would cause inconvenience); *Kelley v. Norfolk & W. Ry. Co.,* 584 F.2d 34, 35–36 (4th Cir.1978) (courts must focus on both qualitative and quantitative considerations).

Here, there are 281 Rule 23 Class Members.[8]  For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met for purposes of settlement. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

### 2.  Commonality

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D.Fla.2001) (same). Here, the commonality requirement is satisfied for purposes of settlement because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices pertaining to the TSRs—specifically, whether their purported use of the fluctuating workweek complied with the FLSA and its supporting regulations—and are common to the Class.

### 3.  Typicality

In a similar fashion, Rule 23(a)'s "typicality" requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Flanagan v. Ahearn ( In re Asbestos Litigation),* 90 F.3d 963, 976 (5th Cir.1996) (citing *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468, 472 (5th

---

[8]  *See supra* n. 8.

Cir.1986)).

The Plaintiffs' claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### 4. Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Representative Plaintiffs and the settlement class, and Plaintiffs have retained competent counsel to represent them and the settlement class. Class Counsel here regularly engages in wage and hour class litigation and other complex litigation similar to the present Litigation and have dedicated substantial resources to the prosecution of the Action. Moreover, the Representative Plaintiffs and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

### 5.   Predominance and Superiority

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 281 Rule 23 Class Members in a single, coordinated proceeding is superior to 281 individual lawsuits in dozens of courts all over the country, addressing the same legal and factual issues.  With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all Class Members in a single common judgment.  *See In re Checking Account Overdraft Litigation,* 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class.  Thus, the Court should finally certify the settlement class.

### B.   The Proposed Settlement is fair, reasonable, and adequate, and should be approved.

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the

13

parties.'"   *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977)).

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Smith,* 926 F.2d 1027, 1029 (11th Cir.1991)("Settlement is generally favored because it conserves scarce judicial resources.").  The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir.1994).   In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 2011 WL 6003986 (11th Cir. 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

### 1.   The Settlement Is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp., supra*. The *Bennett* factors are: (1) the likelihood of

success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and therefore the Court should finally approve the Parties' settlement.

### a.  The Likelihood of Success at Trial.

Although Plaintiffs believe their case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 356 (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages, as Defendants have asserted numerous substantive and procedural defenses. For example, Defendants presented evidence on which a finder of fact (or the Court) could ultimately have relied in finding their pay methodology complied with the FLSA, and there is case law arguably supporting the position of the Defendants.  If successful, this would be a complete defense to Plaintiffs' claims. *See, e.g., Lalli v. Gen. Nutrition Centers, Inc.,* 814 F.3d 1 (1st Cir. 2016) (employer's use of fluctuating work week (FWW) method to calculate overtime for store

manager did not violate FLSA, even though manager's pay varied week to week based on performance-based commissions).[9]  Indeed, the issues at bar are currently under consideration at the Eleventh Circuit.  *See Hernandez v. Plastipak Packaging, Inc.*, 19-12655 (argued Nov. 17, 2020) (considering whether time-based bonuses are compatible with use of the fluctuating workweek).  Additionally, even to the extent Plaintiffs prevailed on the fluctuating workweek argument—based on assertions that Defendants suffered/permitted them to work off-the-clock— Defendants argue that, Plaintiffs suffered little or no damages.  While Plaintiffs believe that they would ultimately have defeated each of Defendants' aforementioned arguments, this would require significant factual development and favorable outcomes at trial and on appeal regarding issues of first impression within the Eleventh Circuit, all of which is inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of final approval.

### b.  <u>Range of Possible Recovery and Range at Which Settlement is Fair.</u>

The relief sought in the settlement is reasonable and within the range of remedies permitted by law.  Under the settlement, each Class Member is eligible to receive a significant proportion of his or her alleged overtime deficiency.  "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail." *Waters v. Cook's Pest Control, Inc*., 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C. October 23, 1998) ("an agreement that secures roughly six to twelve percent of a

---

[9] Here the parties dispute whether the bonuses are properly characterized as performance-based or hours-based.

*potential* recovery ... seems to be within the targeted range of reasonableness"). Here, Plaintiffs are receiving approximately 58% of their best day in court, net of attorneys' fees and costs, service awards, and third-party administrator fees, 14 assuming the time-and-one half model, urged by Plaintiffs. Plaintiffs are receiving approximately 175% of their best day in court, net of attorneys' fees and costs, service awards, and third-party administrator fees, assuming a half-time calculation, urged by Defendants. This compares favorably with amounts received by employees in similar lawsuits. *See* Frisch Decl., ¶45.

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

### c.   <u>Litigation Through Trial Would Be Complex, Costly, and Long.</u>

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with 281 Rule 23 Class Members and claims under federal and state law.

Although the parties conducted a mass of discovery including dozens of depositions, additional discovery would be required to establish liability and damages, including further depositions of Class Members in several states, Defendants, and Defendants' employees and managers. Further, Defendants would have opposed certification of the Rule 23 classes and sought to decertify the conditionally certified FLSA collective action, had the matter not resolved.

17

In addition, the parties likely would have filed cross-motions for summary judgment on the legal issues regarding Defendants' purported use of the FWW and other defenses. If the Court denied the motions, a fact-intensive trial would be necessary to determine whether Plaintiffs and the Class Members were paid in compliance with the FLSA, and parallel state wage and hour laws. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Given the unsettled nature of the law at issue in the case, any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the third *Bennett* factor weighs in favor of approval.

### d. <u>The Reaction to the Settlement Has Been Favorable and In Accord with Similar Cases</u>

The claims, objection and opt out period will close on January 25, 2021. *See* D.E. 924 at 9. Significantly, of the total 281 Rule 23 Class Members to whom the Notice was successfully mailed, as of the date of this Motion, no class member has objected to the settlement and none have opted out. *See* Frisch Decl., ¶72. *See Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") (citing *Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990), wherein fact that only 10% of class members objected to settlement weighed in favor of approval); *Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *15 (C.D. Cal. 2010) (where approximately 5% of class members submitted claims and under 1% opted out or objected, "[t]he comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair"); *Briggs v. Hartford Fin. Servs. Grp., Inc.*, 2009 WL 2370061, at *11 (E.D. Pa. July 31, 2009)

18

("Put otherwise, less than 2.7% of the class opted out. It is therefore fair to infer that a vast majority—over 97%—of the class supports the Agreement.").

### e.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

The parties have completed enough discovery to recommend the settlement for final approval. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. The discovery period in this case was near conclusion when the case settled.  As discussed above, Defendants produced voluminous documents pertaining to their corporate policies, pay and time information pertaining to the classes, class size, and workweek information. Frisch Decl. ¶31.  In addition, the parties conducted dozens of depositions in the case, regarding the wage and hour claims at issue here. *Id*.

Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where the parties exchanged payroll and time

data and policies and procedures and where plaintiffs interviewed numerous opt-ins regarding their duties and hours worked). This factor also weighs in favor of final approval.

> 2.    **Approval of the FLSA Settlement Is Appropriate Under Federal Law.**

Plaintiffs also request that the Court finally approve the settlement of the FLSA claims of the 671 FLSA Collective Members who opted in to the case by submitting consent forms. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Sewell*, 2012 WL 1320124, at *10. Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2012); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was

the result of extensive litigation and arm's-length negotiation involving vigorous back and forth. Frisch Decl. ¶¶35 - 40.  During the litigation, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## II.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement; (2) certify for settlement purposes the Settlement Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e); (3) appoint Plaintiffs, ANTONIO ERVIN ("Ervin"), KYLE BORGAILO ("Borgailo"), COLIN ROGERS ("Rogers"), MATTHEW SHEDRON ("Shedron"), ALEXANDER RAMIREZ ("Ramirez") and MICHAEL MELCHIOR ("Melchior") as "Settlement Class Representatives"; (4) appoint as Class Counsel Andrew R. Frisch, the firm of Morgan & Morgan, P.A., Jason R. Bristol, the firm of Cohen, Rosenthal, & Kramer, LLP, and Jacob Auerbach, and the firm of Gallup Auerbach; (5) award a service award of $2500 to the lead plaintiffs pursuant to Plaintiffs' Unopposed Motion for Approval of Service Awards; (6) retain continuing jurisdiction over Plaintiffs, the Settlement Class, and Defendants to implement, administer, consummate and enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; (7) enter Final Judgment dismissing the Action with prejudice; (8) declare the same binding on all Participating Class Members, and enjoin the Participating Class Members from pursuing any claims that are released by the Settlement Agreement;  and (9) enter an Order of Final Approval of Settlement.

Dated: December 23, 2020

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

*/s/ Andrew R. Frisch*
Andrew R. Frisch
MORGAN & MORGAN P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013
E-Mail: AFrisch@forthepeople.com

-and-

Jason R. Bristol (pro hac vice)
Cohen Rosenthal & Kramer LLP
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
Telephone and Facsimile: 216-815-9500
jbristol@crklaw.com

*Attorneys for Plaintiffs and the Proposed*
*Settlement Class*

## CERTIFICATE OF CONFERRAL PURSUANT TO L.R. 7.1

Plaintiff's undersigned counsel certifies that, pursuant to the Local Rules of the Southern District of Florida, and the Federal Rules of Civil Procedure, he has conferred in good faith regarding the relief sought in this Motion, and is authorized to represent to the Court that Defendants do not oppose same.

*/s/ Andrew R. Frisch*
Andrew R. Frisch

22

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all counsel of record this 23rd day of December, 2020.

/s/ *Andrew R. Frisch*
Andrew R. Frisch

23